IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSHUA LONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | Case No. 06-3089-KHV |
| JUSTIN MORRIS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff *pro se* brings suit against Justin Morris, Johnson County Sheriff's Deputy. Under 42 U.S.C. § 1983, plaintiff alleges that by using excessive force on October 19, 2005, defendant violated his rights under the Eighth Amendment to be free from cruel and unusual punishment. This matter comes before the Court on defendant's Motion For Summary Judgment (Doc. #20) filed December 15, 2006. For reasons set forth below, the Court finds that defendant's motion should be overruled.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The nonmoving party may not rest on its pleadings but must set forth specific facts. Id. at 1241.

The Court must view the record in a light most favorable to the parties opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51.

In *pro se* prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue. See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978). The Martinez report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997). The *pro se* prisoner's complaint, when sworn and made under penalty of perjury, is also treated as an affidavit; like the Martinez report, it serves as evidence for a summary judgment determination. See id.

Plaintiff's opposition brief for the most part does not specifically contradict defendant's factual assertions with reference to those portions of the record on which he relies. See D. Kan. Rule

2

56.1.[1]  The Court recognizes that *pro se* litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); Hass v. U.S. Air Force, 848 F. Supp. 926, 929 (D. Kan. 1994).  The Court has therefore searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment for defendant.  Where supported by the record, the Court has included plaintiff's additional facts and construed them in the light most favorable to plaintiff.

## Facts

On October 19, 2005, plaintiff was incarcerated at the Johnson County Adult Detention Center in Olathe, Kansas in Module 2-D ("2-D").  That evening, Deputy Sheriff Justin Morris was assigned to work in 2-D.  Deputy Ryan Giles was assigned to an adjacent module, but also assisted with inmates in 2-D.  Shortly after 9:00 p.m., plaintiff entered the 2-D day room to begin his

---

[1] D. Kan. Rule 56.1 provides as follows:

(b) Opposing Memorandum.

(1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.

(2) If the party opposing summary judgment relies on any facts not in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply.

recreation period.  Plaintiff was in full restraints (handcuffs attached to a waist belt and leg cuffs). After about 20 minutes, plaintiff crossed a demarcation line and picked up a paper from the floor in front of inmate Michael Fielden's cell.  From an observation point, Giles told plaintiff not to cross the demarcation line.  Morris told plaintiff to drop the letter.  Plaintiff responded that it was just a piece of paper, and that he did not see anything wrong with having it.  Morris reminded plaintiff that jail rules prohibited passing things between cells and crossing demarcation lines.  Morris warned plaintiff that if he violated any more rules, his recreation period would end.

A few minutes later, plaintiff returned to the area near Fielden's cell and dragged the paper across the demarcation line with his foot.  Plaintiff picked up the paper and began to read it.  Morris entered the cell module and told plaintiff that his recreation period was over.  Shortly after that, Giles also entered the cell module.  Morris told plaintiff to lock down in his cell.  Plaintiff said "This is bullshit."  Morris reminded plaintiff of his prior warning and the consequence.  Plaintiff claimed the situation was bullshit, and that it was just a piece of paper.  Morris slowly walked over to where plaintiff was standing and reached out to take the letter from plaintiff.  Plaintiff held the document away from Morris to prevent him from getting the letter.  Plaintiff actively resisted Morris' efforts to take the letter.  Morris reached around plaintiff's body and grabbed the paper.  Morris then pushed plaintiff toward the stairs to get him moving up to his cell.  Morris directed plaintiff to lock down, to which plaintiff replied "You're going to have to make me."  Doc. #21, Ex. B-1 at 4.  At this point the record contains varying accounts of what happened next.

Viewed in a light most favorable to plaintiff, Morris grabbed plaintiff's left shoulder with his right hand, held plaintiff's waist with his left arm and threw plaintiff to the floor, landing on top of him.  Plaintiff's head hit the concrete floor.  Plaintiff required stitches to close a laceration on the

4

right side of his head and suffered a separated right clavicle.[2] In a video recording of the incident plaintiff does not appear to act in a physically aggressive manner at any time. See Ex. B-11 to Reed Affidavit.

Morris maintains that plaintiff acted aggressively toward him and that he used the minimum amount force necessary to control him.[3] In ruling on Morris' motion for summary judgment, however, the Court must construe the record in the light most favorable to plaintiff.

**Analysis**

Defendant seeks qualified immunity on plaintiff's claim of excessive force. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In the

---

[2]  Morris sustained a laceration to his elbow which required stitches.

[3]  Specifically, Morris presents the following version of the facts:

After plaintiff refused a second command to return to his cell, Morris reached out with his right hand to take plaintiff's left arm and physically escort plaintiff to the stairs. Morris also reached out with his left hand to push plaintiff's right shoulder and turn his body toward the stairs. In response, and in an effort to prevent Morris from grabbing his right arm, plaintiff jerked his left shoulder and elbow towards Morris. Plaintiff twisted violently toward his right and away from Morris' grasp. As plaintiff spun to his right, Morris' left arm was wrapped around plaintiff's waist, and Morris' right arm was across plaintiff's back, his hand grasping plaintiff's left shoulder. Morris pulled downward with his right hand on plaintiff's left shoulder, while holding on to plaintiff's waist with his left arm. Plaintiff continued to spin to his right and he drove his legs in an attempt to maintain balance and run out of Morris' grasp. With plaintiff's turning motion and leg drive, along with Morris pulling downward, plaintiff fell over Morris' right leg, to the floor of the cell module. Plaintiff's upper body struck the floor at the same time Morris' right side hit the floor. To maintain control over plaintiff, who was resisting, Morris continued to hang onto plaintiff's body. Morris' momentum caused him to roll over on top of plaintiff. Morris had no intention of causing plaintiff physical harm during this incident. Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #21) filed December 15, 2006 at 8-9.

excessive force context, the qualified immunity defense protects officers from "reasonable mistakes as to the legality of their actions." Saucier v. Katz, 533 U.S. 194, 206 (2001). The Supreme Court has noted as follows:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Id. at 205.

In determining whether defendant is entitled to qualified immunity, the Court first determines whether taken in the light most favorable to plaintiff, the facts show that defendant violated a constitutional right. Id. at 200-01. If so, the Court determines whether the constitutional right was clearly established in light of the specific context of this case. Id. at 201. If plaintiff satisfies this two-part burden, defendant must demonstrate that no material issues of fact remain as to whether his actions were objectively reasonable in light of the law and the information he possessed at the time. See Martin v. Bd. of County Comm'rs, 909 F.2d 402, 405 (10th Cir. 1990). If defendant makes such a showing of objective reasonableness, he is entitled to summary judgment unless plaintiff can demonstrate a factual dispute which is relevant to defendant's immunity claim. See id.

In order to prove an Eighth Amendment violation, plaintiff must show that defendants used excessive force which resulted in "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). While prison officials must occasionally resort to physical force to maintain or restore institutional order, they must also balance the institutional interest in order against the risk of harm to the inmate. See

6

Hudson, 503 U.S. at 5. The core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6; see Mitchell v. Maynard, 80 F.3d 1433, 1440 (10th Cir. 1996).

To succeed on his excessive force claim, plaintiff must show that (1) the alleged wrongdoing was objectively harmful enough to be unconstitutional; and (2) defendant acted with a sufficiently culpable state of mind. Norton v. City of Marietta, 432 F.3d 1145, 1154 (10th Cir. 2005); Thompson v. Gaines, No. 04-3417, 2006 WL 1675608, at *5 (D. Kan. June 13, 2006). The objective component is "contextual and responsive to contemporary standards of decency." Hudson, 503 U.S. at 8. The extent of the injury is relevant, although the absence of serious injury does not end the inquiry. Id. at 7. The Court may also evaluate the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Thompson, 2006 WL 1675608, at *6.

Here, viewing the facts in the light most favorable to plaintiff, Morris unnecessarily and wantonly inflicted pain on him. Plaintiff suffered a contusion to the head which required stitches and a separated clavicle – somewhere between minor and serious injuries. Further, viewed in a light most favorable to plaintiff, the amount of force used was excessive. Plaintiff had not responded to commands to go back to his cell, but he was not acting in a physically aggressive manner. Moreover, plaintiff was in handcuffs and leg restraints, and thus presumably posed little risk of harm. Rather than ordering plaintiff to his cell again, Morris grabbed plaintiff and threw him to the cement floor. Morris' alleged action did not involve the de minimis use of force. See Hudson, 503 U.S. at 9-10 (Eighth Amendment prohibition on cruel and unusual punishment generally excludes

7

from constitutional recognition de minimis uses of physical force). Although plaintiff had verbally challenged Morris' command, plaintiff made no aggressive move toward Morris, was in restraints and was not an immediate threat to prison order and safety.

As to the subjective element of the excessive force claim, this turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7; accord Norton, 432 F.3d at 1154. Again, viewing the evidence in the light most favorable to plaintiff, the use of significant force was unwarranted. See Hill v. Shelander, 992 F.2d 714, 717-18 (7th Cir. 1993) (prisoner challenged guard's order to step out of cell, guard responded by attacking him; reasonable fact finder could conclude that guard acted maliciously and sadistically to cause harm).[4]

Because plaintiff alleges a constitutional violation, the Court must determine whether the constitutional right was clearly established in light of the specific context of this case. Saucier, 533 U.S. at 201-02. Ordinarily, in order for plaintiff to demonstrate that a law is clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992); see Anderson v. Creighton, 483

---

[4] In Hill, an inmate refused to remove his belongings from a bunk so that another inmate could co-occupy the cell. See 992 F.2d at 715. The prison guard left the area and returned with another guard, William Shelander, to transport plaintiff to a disciplinary cell. See id. Shelander ordered plaintiff to step out of his cell, but plaintiff stopped in the doorway and asked why he should have to leave. See id. Plaintiff asserted that Shelander responded by attacking him. Shelander stated that force was necessary to ensure order and that he did not use force until plaintiff swung his arms to break Shelander's grip on his shoulder. See id. at 717. The Seventh Circuit held that the district court properly denied Shelander's motion for summary judgment based on qualified immunity. The Seventh Circuit stated that based on Hill's version of events, a reasonable fact finder could conclude that Shelander acted maliciously and sadistically to cause harm. See id. at 717-18.

U.S. 635, 640 (1987) (right clearly established if contours of right sufficiently clear so that reasonable official would understand what he is doing violates that right). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202.

Defendant asserts that he is entitled to qualified immunity because he subjectively believed that his actions were justified and his actions were objectively reasonable. Construing the facts in the light most favorable to plaintiff, however, defendant's alleged belief was not objectively reasonable. The record supports an inference that while plaintiff was shackled at the wrists, waist and ankles, Morris took him to the ground, hit his head on the floor (hard enough to require stitches) and displaced his collar bone. Under these circumstances, the law is clearly established that defendant's alleged actions violated plaintiff's rights under the Eighth Amendment. See Hill, 992 F.2d at 717-18; see also Hudson, 503 U.S. at 6-10 (allegations that officials held, punched and kicked inmate who was handcuffed and shackled sufficiently stated Eighth Amendment violation); Mitchell, 80 F.3d at 1440-41 (beating shackled inmate with night sticks while shouting racial epithets violated Eighth Amendment); cf. Saucier, 533 U.S. at 205 (if officer reasonably believed that suspect was likely to fight back, officer justified in using more force than needed).

Defendant has not conclusively shown that his actions were objectively reasonable in light of the law and the information which he possessed. See Martin, 909 F.2d at 405. Accordingly, defendant is not entitled to qualified immunity on plaintiff's excessive force claim.

Defendant also asserts that he is entitled to summary judgment on the merits of plaintiff's claim of excessive force. As discussed above, however, construed in the light most favorable to plaintiff,

9

the record supports an inference that defendant violated plaintiff's rights under the Eighth Amendment.

**IT IS THEREFORE ORDERED** that defendant's Motion For Summary Judgment (Doc. #20) filed December 15, 2006 be and hereby is **OVERRULED.**

Dated this 3rd day of May, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge